UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WANDA GRAVES Individually and for Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:24-cv-01031-TWP-TAB |
| | ) |
| FRANCISCAN ALLIANCE, INC. agent Franciscan Health, | ) ) ) |
| Defendant. | ) ) |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE IWPCA CLAIM**

This matter is before the Court on Defendant Franciscan Alliance, Inc.'s ("Franciscan") Motion to Dismiss Plaintiff's Claim Under the Illinois Wage Payment and Collection Act ("IWPCA") (Filing No. 15). Plaintiff Wanda Graves ("Graves") initiated this action individually and for others similarly situated (the "Putative Class Members") (collectively, "the Plaintiffs") against Franciscan, alleging violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the IWPCA, for depriving Plaintiffs of pay for all overtime hours worked (Filing No. 1). Franciscan seeks dismissal of the IWPCA claim. For the reasons discussed below, the Motion is **denied**.

### I.   BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Graves as the non-moving party. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022).

Franciscan operates hospitals and medical facilities throughout Illinois and Indiana (Filing No. 1 at 4). The Plaintiffs were employed by Franciscan to provide patient care services and treat patients in their facilities. *Id*. Graves, a former employee of Franciscan, worked as a registered nurse ("RN") at Franciscan's facility in Olympia Fields, Illinois. *Id*. at 2. The record is unclear how long Graves, or the other Putative Class Members were employed by Franciscan, only that Graves was employed "until approximately October 2023." *Id*. The Plaintiffs were classified as non-exempt from overtime and were paid on an hourly basis. *Id*. at 5. As an RN for Franciscan, Graves' responsibilities included providing healthcare services, facilitating patient care, and responding to patient emergencies.

Plaintiffs performed their work under Franciscan's supervision, and used materials, equipment, and technology approved and supplied by Franciscan. At the end of each pay period, the Plaintiffs were paid wages. Plaintiffs were subjected to an automatic deduction of thirty minutes from their recorded hours worked each shift for meal breaks. This deduction occurred regardless of whether Plaintiffs received a meal break. *Id*. at 6. Franciscan consistently required Plaintiffs to remain on-duty and working throughout their shifts causing any attempted meal period to be interrupted or not exist at all. *Id*. Still, Franciscan deducted the thirty minutes when calculating Graves' and the Putative Class Members' wages. *Id*.

During their employment, Franciscan agreed to pay Graves and each Putative Class Member an hourly rate for all hours they worked under and up to 40 hours in a workweek. *Id*. at 11. Graves and each Putative Class Member accepted Franciscan's offer. *Id*. But during their employment, Franciscan failed to pay Graves and the Putative Class Members for all time they worked at the rates Franciscan agreed to pay them for the work they performed because Franciscan automatically deducted thirty minutes per shift from these employees' recorded hours worked. *Id*.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. Of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.     DISCUSSION

Graves alleges that Franciscan did not pay her and similarly situated persons for work performed during their purported meal breaks pursuant to Franciscan's automatic meal break

3

deduction policy. She brings this as a collective action under the FLSA and a class action under Illinois law, seeking to represent all persons similarly affected by Franciscan's automatic meal break deduction policy. Franciscan argues that Plaintiffs fail to plausibly plead a claim under the IWPCA and seeks dismissal of the IWPCA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Filing No. 15).

The IWPCA "provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citing 820 ILCS 115/3). "The IWPCA defines 'wages' as 'compensation owed an employee by an employer pursuant to an employment contract or agreement between the [two] parties.'" *Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021) (quoting 820 Ill. Comp. Stat. 115/2). "To state a claim under the IWPCA, employees are 'required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement.'" *Id*. (quoting *Enger*, 812 F.3d at 568; citing *Brown v. Lululemon Athletica, Inc.*, No. 10 C 05672, 2011 U.S. Dist. LEXIS 18217, at *3 (N.D. Ill. Feb. 24, 2011) ("It is well established that an employee can have no claim under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the particular work allegedly performed.")). Yet, the "employment agreement need not be a formally negotiated contract." *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill. App. Ct. 2005). A plaintiff "does not need to plead all contract elements if she can plead facts showing mutual assent to terms that support the recovery." *Id*.

Nonetheless, the IWPCA "provides no substantive relief beyond what the underlying employment contract requires." *Enger*, 812 F.3d at 570. "The IWPCA therefore does not provide an independent right to payment of wages and benefits; instead, it only enforces the terms of an existing contract or agreement." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill.

2012). "Thus, the IWPCA holds the employer only to its promise under the employment agreement." *Chagoya*, 992 F.3d at 624.

Franciscan contends that Graves has failed to plausibly plead the existence of an agreement between the parties containing the specific terms that Graves alleges were violated (Filing No. 16 at 6). Franciscan argues that Graves has merely alleged the existence of some employment agreement rather than the existence of an "agreement that specifically gives her a right to the wages she seeks." *Dominguez v. Micro Ctr. Sales Corp.*, No. 11 C 8202, 2012 U.S. Dist. LEXIS 67312, at *1 (N.D. Ill. May 15, 2012) (dismissing an IWPCA claim, noting plaintiff's complaint alleging "the existence of *some* employment agreement" was not enough).

In support of its position, Franciscan relies on *Smith v. C.H. James Restaurant Holdings LLC*, No. 11 C 5545, 2012 U.S. Dist. LEXIS 9960 (N.D. Ill. Jan. 26, 2012). In *Smith*, the plaintiff worked at Burger King and argued that the computerized time-keeping system would reboot for twenty-sixty minutes a day and not count his hours during such reboot and that he was not paid overtime for other "off the clock" work. *Id*. at *2. The Northern District of Illinois reasoned:

> Smith does allege . . . in a conclusory fashion that Smith and Defendants had an "agreement" that Defendants would pay Smith an hourly wage for time worked off the clock. However, Smith has not pointed to any contract or an agreement and the terms under such a contract or agreement relating to his IWPCA claim. Smith makes merely a general statement about an agreement between Defendants, him, and "all similarly situated individuals." Such a conclusory allegation that there was an agreement is not sufficient to suggest that Smith and Defendants had the necessary mutual assent and formed an agreement concerning Smith's pay as it relates to his IWPCA claim.

*Id*. at *5 (internal citations omitted). Franciscan argues the allegation that "Franciscan agreed to pay Graves for all hours worked" is insufficient as Graves "offers no factual details as to the nature or terms of these purported agreements with Franciscan – including any rates of pay – or how and

5

when they were formed." (Filing No. 16 at 7). Franciscan contends the absence of such details warrants dismissal pursuant to *Smith*.

Franciscan also points the Court to *Gomez v. El-Milagro, Inc.*, No. 23 C 1606, 2023 U.S. Dist. LEXIS 187039, at *2 (N.D. Ill. Oct. 18, 2023) where the plaintiff alleged that he was not paid for hours worked during his lunch break. In *Gomez*, the court held that the parties had not agreed to pay the plaintiff during his lunch break "regardless of whether [he] worked through the lunch break or not." *Id*. at *4. The *Gomez* court explained that the plaintiff's decision to eat in his truck while driving from one delivery to another did not illicit an assent by the employer to pay him for that time. *Id*.

Lastly, Franciscan cites *Loonsfoot v. Stake Center Locating, LLC*, No. 23-CV-03171, 2024 U.S. Dist. LEXIS 133779 (S.D. Ill. July 29, 2024) arguing that "conclusory allegations that an employer agreed to pay an employee an agreed upon hourly rate for all hours of work performed, are insufficient to support a claim that an employer failed to pay an employee for off-the-clock work before or after work and/or during unpaid meal breaks." *Id*. at *17. In *Loonsfoot*, the plaintiff alleged that their employer agreed to pay them and all IWPCA putative class members an hourly rate for all the hours of work they performed. *Id*. Loonsfoot further alleged that they were required to perform "work-related tasks" during unpaid meal breaks and before and after their scheduled hours without pay. *Id*. at *5. The court held that "the alleged agreement [did] not allege any terms that 'specifically [give plaintiff] a right to the wages [he] seeks' – payment for off-the-clock work performed before or after work and during otherwise unpaid meal breaks." *Id*. at *17 (quoting *Chagoya*, 992 F.3d at 624). The court further held that even allegations of rate of pay "[do] not establish a 'manifestation' of mutual assent to pay [plaintiff] for off-the-clock work. *Id*. (quoting *Landers-Scelfo*, 827 N.E.2d at 1059).

6

In her Response, Graves argues that at this stage of the litigation, it is not her burden to allege rates of pay or specifically how and when each agreement was entered into. Graves notes that she "does not need to plead all contract elements if she can plead facts showing mutual assent to terms that support the recovery." *Landers-Scelfo*, 827 N.E.2d at 1059. Graves argues that the burden for establishing mutual assent is low and thus, her allegations are sufficient to support the existence of an employment agreement between Franciscan and the plaintiffs (Filing No. 18 at 3). *Martinez v. Utilimap Corp.*, No. 14-cv-310, 2014 U.S. Dist. LEXIS 164349, at *8 (S.D. Ill. Nov. 24, 2014) ("anything [the employer] is obligated to pay the [employees] by virtue of their work for [the employer] is 'pursuant to an employment agreement'" (quoting 820 Ill. Comp. Stat. 115/2)). Franciscan contends that the Seventh Circuit has refused to accept such an expansive view citing *Chagoya*, 992 F.3d at 624 (explaining that an agreement requiring compensation "for the particular work allegedly performed" is necessary for an IWPCA claim). However, such argument is immaterial as Graves' Complaint satisfies even the narrowed standard in *Chagoya*.

Graves specifically alleges that Franciscan agreed "to pay Graves her hourly rate for her first [forty] hours worked plus overtime for her hours worked over [forty] in a workweek." (Filing No. 1 at 5). The Complaint alleges that Franciscan violated such agreement by automatically deducting thirty minutes from Graves recorded hours each shift even when she did not receive a meal break. Graves also provided her typical schedule under the agreement where she states that she is typically scheduled four twelve-hour shifts each week. Finally, Graves states the specific services she was required to perform under the agreement—providing healthcare services, facilitating patient care, and responding to patient emergencies. Most importantly, these services are the same "particular work allegedly performed" that she claims Franciscan has failed to pay her for. *Chagoya,* 992 F.3d at 624. While existing overtime laws themselves do not warrant liability

under the IWPCA, "an agreement to pay overtime in accordance with existing overtime laws is a cognizable agreement for IWPCA purposes." *Snell-Jones v. Hertz Corp.*, No. 19-cv-00120, 2020 U.S. Dist. LEXIS 43696, at *18 (N.D. Ill. March 13, 2020). Such agreement is at issue in this case as Graves alleges that Franciscan agreed to pay her overtime for all hours worked more than forty in a workweek. Such allegations are sufficient to satisfy *Chagoya*.

To survive Franciscan's Motion to Dismiss, Graves must allege facts showing mutual assent to pay her for overtime hours worked. Graves has met this burden. Franciscan argues Graves must provide—rates of pay and how and when the agreements were formed—but these are facts that Graves may not have access to without discovery. Graves may have access to her own rate of pay but likely does not have access to the Putative Class Members' rate of pay without discovery. Further, without access to the agreements, Graves is unlikely to be able to allege exactly how and when each agreement was formed. As such, it would be improper to require Graves to plead such facts in her Complaint. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 529 (7th Cir. 2015) ("We cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information she could not access without discovery.").

Graves alleges far more than the general statement about an agreement alleged by Smith in this non precedential case. *See Smith v. C.H. James Restaurant Holdings LLC*, No. 11 C 5545, 2012 U.S. Dist. LEXIS 9960 (N.D. Ill. Jan. 26, 2012). While the Court agrees that the mere statement about some agreement in *Smith*, without more, is not enough, Graves goes well beyond a simple statement and provides the Court with enough facts to "allow the court to draw the reasonable inference that [Franciscan] is liable" under the agreement. *Iqbal*, 556 U.S. at 678. Graves' allegations provide that an agreement existed between the parties, the exact services she was to perform under the agreement along with her typical work schedule pursuant to the

8

agreement, and that such agreement was violated pursuant to Franciscan's automatic deduction of thirty minutes per shift.

Though similar, the facts in *Gomez* differ from the facts in this case as Graves is alleging that even though Franciscan agreed to provide her a meal break, they failed to do so and forced her to work during any attempted meal break, and then failed to pay her for such time. Such allegations are distinguishable from *Gomez* because Gomez chose to work through his lunch break even though he acknowledged that the parties agreed the employer would not pay him during such time. *Id*. Graves alleges no such choice.

In *Loonsfoot*, the plaintiff and the IWPCA Putative Class Members performed work-related tasks such as "driving from one project to another" during their mandated meal breaks. *Loonsfoot* at *5. Thus, it makes sense that the court would require a separate agreement to be paid for the off-the-clock work-related tasks. In this case however, Graves alleges that she was forced to perform the same work she does when on-the-clock during her meal break rather than being provided time to actually take a break. Specifically, Graves alleges that she and the Putative Class Members were required by Franciscan "to remain on-duty throughout their shifts" and that Franciscan "continuously [subjected] them to interruptions during their unpaid 'meal breaks'" essentially requiring her to remain on-the-clock and failing to provide a meal break at all (Filing No. 1 at 1).

The distinctions between this case and the facts in *Gomez* and *Loonsfoot* comport with general principles of contracts as well. If an employee wants to be paid for the additional or separate work-related tasks they do on their lunch break, such as the plaintiffs driving from one job site or delivery to another in *Gomez* and *Loonsfoot*, they must show that their employer agreed to pay them for it. However, if the employer requires the employee to perform those same services as "the particular work allegedly performed" under the employment agreement essentially forcing

9

them to remain on-the-clock during their lunch break, there is an implicit understanding that the employer assented to compensation for the work. Further, there is an implicit understanding that the employee should not have to prove a separate agreement exists beyond alleging facts that give rise to such assent at this stage of the litigation. As noted above, a formally negotiated agreement is not required for a claim under the IWPCA. *Landers-Scelfo*, 827 N.E.2d 1059. Moreover, a plaintiff need not attach documents to their complaint upon which their action is based. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). By alleging that Franciscan required her to perform the same work during her lunch break as she performed under her employment contract and that she was not compensated for the work, Graves has alleged facts sufficient to survive a motion to dismiss under the IWPCA.[1]

Because the Court concludes that Graves has sufficiently alleged her IWPCA claim, the Court need not address Graves' argument that Franciscan has been put on notice of her claims.

### IV.    CONCLUSION

For the reasons stated above, Franciscan's Motion to Dismiss Plaintiffs claim under the IWPCA (Filing No. 15) is **DENIED**. Whether Graves can prove that such agreement exists and that such allegations are true is a matter that can be tested on summary judgment or at trial.

**SO ORDERED.**

Date:   3/3/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

---

[1] Franciscan also cites *Hoffman v. Roadlink Workforce Solutions, LLC*, No. 12 C 7323, 2014 U.S. Dist. LEXIS 105081 (N.D. Ill. Aug. 1, 2014). However, *Hoffman* is distinguishable as the plaintiff in that case alleged that they were not paid for the time it took to enter and exit the warehouse where they worked. Even if applicable, Hoffman was required to leave the building and not work during his lunch break. Such circumstances contrast those in the present case.

Distribution:

Amy Joan Adolay
KRIEG DEVAULT LLP (Carmel)
aadolay@kdlegal.com

Carl A. Fitz
Fitz Law PLLC
carl@fitz.legal

Hilary Kathryn Leighty
Krieg DeVault LLP
hleighty@kdlegal.com

Marc T. Quigley
KRIEG DEVAULT LLP (Carmel)
mquigley@kdlegal.com